## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES C. GOSTOMSKI,** | : | **Civil No. 1:21-CV-597** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **KILOLO KIJAKAZI,** | : | **(Magistrate Judge Carlson)** |
| **Acting Commissioner of Social Security[1],** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.   Introduction

In the instant case we most assuredly do not write upon a blank slate. Quite the contrary, this Social Security appeal calls upon us to evaluate the third Administrative Law Judge (ALJ) decision relating to Mr. Gostomski's disability claim, and this is the second Social Security appeal taken to the district court since Mr. Gostomski initially applied for benefits in April of 2015.

In the course of these protracted administrative proceedings, an extraordinarily voluminous and detailed record has been amassed spanning some

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g) Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

4,900 pages. (Tr. 1-4915). The sheer volume of this record presented a particular challenge for the ALJ conducting this third administrative hearing, and in this, Gostomski's appeal of the agency's third adverse disability determination, the plaintiff argues that the ALJ erred in numerous respects in the assessment and evaluation of this extensive record. Specifically, Gostomski contends, in part, that this latest ALJ decision failed to adequately account for Gostomski's need to use a cane or other assistive device while at work.

While we do not in any way minimize the difficulty of the task confronting the ALJ in this case, we believe that this contention has merit and warrants a remand for further consideration of this case by the Commissioner. We reach this conclusion mindful of the fact that Social Security appeals are judged by a deferential standard of review, but the courts have imposed a clear burden of articulation upon an ALJ in order to facilitate this review. At a minimum, this articulation responsibility means that the ALJ's decision must provide a logical nexus between any factual findings and ultimate functional capacity and disability determinations. This principle applies with particular force to cases involving claimants who may have a medical need for a cane or other assistive device. Because the use of a cane to ambulate may significantly undermine the ability to work, courts have held that where a claimant has been deemed by a physician to medically require a cane, and a vocational expert

2

has opined that use of the cane in combination with other impairments could render the claimant unemployable, the ALJ must make specific, well-articulated findings in order to deny the claim for benefits. Failure to fully address this issue may compel a remand of the case for further consideration by the Commissioner.

So it is here.

The plaintiff, James Gostomski, is a man in his late 40's who undeniably suffers from severe, ongoing, and intractable pain as a result of degenerative disc disease of the lumbar spine. Multiple treating medical sources have stated that Gostomski needs a cane to ambulate. Given this medical consensus indicating that Gostomski would need an assistive device in the workplace, even the state agency expert who evaluated this case in June of 2018 factored use of a cane into this disability assessment, and concluded that Gostomski should avoid vibrations, machinery, and unprotected heights. (Tr. 1549-50). In this decision denying Gostomski's latest application for benefits, the ALJ stated that he gave this state agency expert "opinion great weight as it is supported by and consistent with . . . examination findings and longitudinal treatment history." (Tr. 1351). Yet, paradoxically, the ALJ fashioned a residual functional capacity assessment for Gostomski which made no mention of his use of an assistive device and, in fact, contradicted the state agency expert's findings. Thus, instead of calling for

3

Gostomski—who used a cane to ambulate and stand—to avoid vibrations, machinery, and unprotected heights as recommended by the state agency expert, the ALJ's RFC determination stated that: "[t]he claimant could work at unprotected heights frequently, around moving mechanical parts frequently, in extreme cold and heat frequently, and in vibration frequently." (Tr. 1338).

In our view, more is needed here. Indeed, in similar circumstances we have held that when an ALJ "fashioned an RFC for [a claimant] that allowed h[im] to perform . . . work at unprotected heights without accounting for h[is] need for a cane, a remand is warranted." Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087, at *9 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.   Factual Background an Procedural History

### A. Medical Evidence Regarding Gostomski's Use of a Cane

The appeal raises a host of legal issues presented against the backdrop of a 4,900 page administrative record. However, because we have determined that a remand is necessary due solely to the failure to adequately address the plaintiff's need to use a cane in the workplace, a matter which did not receive meaningful consideration in the ALJ's decision, we will focus upon this issue when assessing the medical evidence.

Gostomski's disability applications are based upon the combined effects of a cascading array of profound physical and emotional impairments. Physically, Gostomski suffers from the following severe impairments: Degenerative Disc Disease of the Lumbar Spine with Facet Hypertrophy and Radiculopathy and Neuritis/ Radiculitis. (Tr. 1333). Gostomski's intractable back pain, in turn, has given rise to a series of severe emotional impairments beginning in 2015, including Depressive Disorder, Adjustment Reaction, Anxiety, Panic Disorder, and Pain Disorder. (Id.) Indeed, medical records indicate that Gostomski's back pain was so persistent and severe that it has caused the plaintiff to consider suicide.

As a result of this chronic back pain, Gostomski has consistently testified that he routinely uses a cane to stand and ambulate. For example, on March 16, 2017, Gostomski testified that he used a cane to stand and walk "98% of the time." (Tr. 74). On April 25, 2019, during a second disability hearing, Gostomski testified that he used a cane "constantly" to ambulate. (Tr. 1412). Gostomski's treatment records from 2015 through 2018 confirmed his frequent use of a cane to assist him in standing and ambulating. Thus, while some clinical notes indicated that occasionally Gostomski walked without assistance, the clinical record was replete with references

to the plaintiff's antalgic gait and his routine use of a cane to ambulate and stand.[2]

Therefore, the greater weight of the clinical evidence fully supported the medical

opinion consensus that Gostomski needed a cane in the workplace.

These treatment records also contained a number of entries in which

physicians specifically directed Gostomski to use a cane, assistive device, or braces.

For example, on January 5, 2016, Dr. Bryan O'Young instructed Gostomski to

"continue using cane" and to "wear lumbar braces to reduce mechanical stress on

the spine." (Tr. 948). Moreover, by November of 2016, Dr. Joshua Hottenstein

directed Gostomski to use a quad cane for greater safety and stability. (Tr. 3758-59).

Given this treatment history, Gostomski's primary treating sources, Dr.

Hottenstein, and Physician Assistant Kyle Maza, reached similar conclusions

regarding the degree of Gostomski's impairment, and the medical necessity for

Gostomski to rely upon a cane or assistive device to stand and walk.  In a January

24, 2017, medical source statement, Dr. Hottenstein reported that Gostomski needed

a cane to ambulate; could stand and walk for less than two hours during a work day;

and could only stand or walk for fifteen to thirty minutes at a time. (Tr. 482). Dr.

Hottenstein also concluded that due to his impairments, Gostomski would have to

---

[2] Tr. 948, 3302, 3319, 3361, 3393, 3502, 3555, 3586, 3627, 3688, 3691, 3706, 3708-09, 3712, 3715, 3725, 3730, 3748, 3758-59, 3984, 4009, 4033, 4119.

avoid moving machinery, unprotected heights, vibrations, and temperature extremes. (Tr. 483). Physician Assistant Maza agreed with these findings in his own independent evaluation submitted in March of 2019. (Tr. 4423-27). According to Physician Assistant Maza, Gostomski could sit, stand, or walk for less than two hours during the work-day, and could only sit stand or walk for fifteen minutes at a time. (Tr. 4425). Gostomski also required an assistive device while standing and walking. (Tr. 4426).

In fact, as to these limitations, and Gostomski's need to use a cane in the workplace, there appeared to be a complete and total consensus of medical opinion. Even Dr. Gandhi, the state agency expert who evaluated this case in June of 2018, acknowledged Gostomski's need for a cane at work. Specifically, Dr. Gandhi factored the use of a cane into his disability assessment, stating that in Gostomski's case, a 4 hour maximum for standing and walking could be justified with the use of a cane and braces, and concluding that Gostomski should avoid vibrations, machinery, and unprotected heights. (Tr.1549-50).

It was on this medical record—which confirmed Gostomski's need for a cane, his frequent use of a cane, and his severe workplace limitations due to his need for cane—that this case came before the ALJ for evaluation and decision.

## B. **Procedural History**

This case has a lengthy and complex procedural history. Mr. Gostomski initially filed for disability benefits under Title II of the Social Security Act some seven years ago, on April 22, 2015. (Tr. 1457). At that time, Gostomski alleged that he was disabled due to the combined effects of degenerative disc, disease of the lumbar spine, depression, anxiety, adjustment disorder and pain disorder. (Tr. 1459-60). A hearing was held on this initial disability application on March 16, 2017. (Tr. 54-85). At that hearing, Gostomski testified regarding his intractable back pain and stated that he used a cane to stand and walk "98% of the time." (Tr. 74).

On August 2, 2017, an ALJ denied Gostomski's initial disability application. (Tr. 1454-70). In denying this application, the ALJ found that Gostomski could perform a limited range of light work. (Tr. 1462). However, the ALJ's residual functional capacity assessment seemed to credit the postural restrictions that Gostomski faced due to his frequent reliance upon a cane. Thus, the RFC factored in a sit-stand option for Gostomski and provided that he must avoid cold and heat, vibrations, moving machinery, and unprotected heights. (Id.)

On March 27, 2018, Gostomski appealed this adverse determination. (Tr. 1480-83). Following careful review, the district court reversed the Commissioner's

decision and remanded this case for further consideration by the Commissioner on November 4, 2019. (Tr. 1484-1517).

In the meanwhile, as this first case was pending, Gostomski filed second application for Title II disability benefits on March 8, 2018. (Tr. 1520). A hearing was conducted on this second disability application on April 25, 2019. (Tr. 394-1453). During this second hearing, Gostomski testified, once again, that he used a cane "constantly" to ambulate. (Tr. 1412). In response to questioning by the ALJ regarding why some treatment notes did not reflect the use of a cane, Gostomski reiterated his constant need for a cane, and indicated that a failure of some treatment notes to record his use of a cane would have been an oversight or omission by care givers. (Tr. 1413). Gostomski also repeated his need for a frequent sit-stand option in the workplace, something that the first ALJ had incorporated into his initial RFC. (Tr. 1415-16).

On May 13, 2019, an ALJ issued a decision denying Gostomski's second disability application. (Tr. 1523-35). This second decision also concluded by Gostomski could perform light work (Tr.1531), and acknowledged his use of a cane, (Tr. 1532), but the RFC fashioned by the ALJ made no provision of the use of a cane at work. Instead, the ALJ found without further explanation in May of 2019 that Gostomski could be frequently exposed to unprotected heights, vibrations, and

moving machinery, all of which was inconsistent with his need to use a cane at work. (Tr. 1531). This conclusion was particularly puzzling since the ALJ also found the decision of Dr. Gandhi, a state agency expert, persuasive in this analysis. (Tr. 1533). However, Dr. Gandhi's medical opinion factored the use of a cane into the disability assessment, stating  that a 4 hour maximum for standing and walking could be justified with the use of a cane and braces. (Tr. 1549). This state agency expert analysis which the ALJ pronounced persuasive also explicitly contradicted the ALJ's RFC in that Dr. Gandhi flatly stated that Gostomski should avoid extreme cold, wetness, humidity, vibration, machinery, and heights. (Tr. 1550). The inconsistencies between the ALJ's RFC and the medical of opinion of Dr. Gandhi, the primary medical source relied upon by the ALJ, were never addressed or acknowledged in this May 2019 decision.

Gostomski appealed this second adverse decision to the Social Security Appeals Council, (Tr. 1559-61), and that intra-agency appeal was still pending  when the district court reversed and remanded the adverse decision on Gostomski's first appeal. On March 31, 2020, the Appeals Council then consolidated these two prior disability proceedings, and remanded this case for further consideration by an ALJ.

Mr. Gostomski's third administrative hearing took place on October 22, 2020. (Tr. 1365-85). A vocational expert testified at this third hearing, identifying jobs

which Gostomski might be able to perform notwithstanding his impairments. (Id.) In the course of her testimony, the vocational expert testified that if Gostomski required the use of a cane and a sit-stand option, then "that would eliminate all work." (Tr. 1378). Thus, the vocational expert testimony underscored how Gostomski's cane usage and need to frequently change position would severely erode any occupational base for this disability claimant.

Following this hearing, on December 11, 2020, the ALJ issued a decision denying Gostomski's disability applications. (Tr. 1326-58). In this decision, the ALJ first determined that Gostomski met the insured status requirements of the Act through September 30, 2017. (Tr. 1333). The ALJ then found that Gostomski had not engaged in any substantial gainful activity between the alleged date of onset of disability, April 27, 2014, through his date last insured, September 27, 2017. (Id.)

At Step 2 of the sequential analysis which governs Social Security disability determinations, the ALJ ascertained that Gostomski suffered from the following array of severe impairments:

> From the alleged onset date of April 27, 2014, through the date last insured, the claimant had the severe impairments of Degenerative Disc Disease of the Lumbar Spine with Facet Hypertrophy and Radiculopathy and Neuritis/ Radiculitis. As of September 17, 2015, through the date last insured, the claimant also has had the severe impairments of Depressive Disorder, Adjustment Reaction, Anxiety, Panic Disorder, and Pain Disorder.

11

(Id.)

At Step 3, the ALJ concluded that none of Gostomski's impairments met or equaled a listed impairment. (Tr. 1334-38). Between Steps 3 and 4, the ALJ then fashioned the following physical residual functional capacity (RFC) assessment for Gostomski:

> After careful consideration of the entire record, the undersigned finds that from the alleged onset date of April 27, 2014, through the date last insured of September 30, 2017, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant could occasionally balance, stoop, kneel, crouch, and crawl, as well as occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. The claimant could work at unprotected heights frequently, around moving mechanical parts frequently, in extreme cold and heat frequently, and in vibration frequently.

(Tr. 1338).

This RFC determination was noteworthy in several respects.

First, it makes absolutely no mention of, or provision for, Gostomski's use of a cane. The ALJ did not include the use of a cane into this RFC in any way despite the fact that every opining medical source—including the state agency expert relied upon by the ALJ—specifically factored the need for Gostomski to use a cane into their disability evaluations. Instead, the ALJ seemed to have largely discounted the medical consensus that Gostomski needed a cane to stand or ambulate based upon his view of the clinical evidence, stating that: "while it was certainly noted by some

12

of his provider [sic] that he was using a cane, during other visits and appointments of record, it was noted that he was not using an assistive device." (Tr. 1345).

The ALJ's view of the clinical evidence also seemed incomplete. To be sure, the ALJ cited a handful of instances in which it was reported that Gostomski did not use a cane to support this view of the clinical record. However, the ALJ failed to mention that the greater weight of the evidence documented Gostomski's need for a cane to stand, balance, and walk. Thus, the ALJ's decision both discounted an apparent medical opinion consensus that considered Gostomski's use of a cane as part of this analysis and gave little credence or significance to the more than twenty clinical notations describing the plaintiff's use a cane to stand and ambulate. (Tr. 948, 3302, 3319, 3361, 3393, 3502, 3555, 3586, 3627, 3688, 3691, 3706, 3708-09, 3712, 3715, 3725, 3730, 3748, 3758-59, 3984, 4009, 4033, 4119).

The ALJ's RFC also made no provision for a sit-stand option for Gostomski, even though every treating source said that such an option was necessary in this case. On this score, the latest ALJ decision stood in stark contrast to the first ALJ determination, which specifically factored a sit-stand option into this disability assessment.

The ALJ then afforded little or only partial weight to the treating source opinions of Dr. Hottenstein and Physician Assistant Maza, (Tr. 1350-53), reasoning

that these treating source opinions were not consistent with the longitudinal record, even though that longitudinal record was replete with references to Gostomski's need to use a cane. Instead, ALJ gave the opinion of Dr. Gandhi, a state agency expert "great weight as it is supported by and consistent with . . . examination findings and longitudinal treatment history." (Tr. 1351).

Yet, paradoxically, the ALJ fashioned a residual functional capacity assessment for Gostomski which made no mention of his use of an assistive device, something that Dr. Gandhi specifically factored into his opinion. Moreover, the ALJ crafted an RFC for Gostomski which was actually contradicted by some of the state agency expert's findings. For example, Dr. Gandhi specifically stated that Gostomski should avoid extreme cold, wetness, humidity, vibration, machinery, and heights. (Tr. 1550). Dr, Hottenstein, Gostomski's primary treating physician, also concluded that due to his impairments Gostomski would have to avoid moving machinery, heights, vibrations, and temperature extremes. (Tr. 483). Yet, while the ALJ purported to give great weight to Dr. Gandhi's opinion, instead of calling for Gostomski—who used a cane to ambulate and stand—to avoid vibrations, machinery, and unprotected heights as recommended by the state agency expert, the ALJ's RFC determination stated that: "*The claimant could work at unprotected*

*heights frequently, around moving mechanical parts frequently, in extreme cold and heat frequently, and in vibration frequently.*" (Tr. 1338) (emphasis added).

Having reached an RFC determination which was at odds with the record in these respects, the ALJ concluded at Step 4 that Gostomski was capable of performing his past relevant work, (Tr. 1355), and denied this disability application. (Tr. 1357-58).

This appeal followed. (Doc. 1). On appeal, Gostomski raises a host of challenges to the ALJ's decision, and specifically argues that the ALJ failed to adequately address the limitations which Gostomski's use of a cane at work would create. We find that the ALJ's analysis of this issue is deficient in that it makes no provision for Gostomski's use of a cane, something that every medical source factored into their disability analysis. We further find that the ALJ has not adequately explained why he placed great weight on the opinion of Dr. Gandhi, the state agency expert, but then entirely discounted the limitations on exposure to heights, vibrations, and moving machinery that were found by Dr. Gandhi, and instead called for Gostomski to work in professions that frequently exposed him to these hazards. On these facts, as discussed below, we conclude that the ALJ's burden of articulation has not been met in this appeal, and therefore this case will be remanded for further consideration and evaluation of the medical evidence.

III.  **Discussion**

    A.  **Substantial Evidence Review – the Role of this Court**

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in

this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is

disabled, but rather whether the Commissioner's finding that she is not disabled is

supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote

a lack of substantial evidence.") (alterations omitted); <u>Burton v. Schweiker</u>, 512 F.

Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of

a claim requires the correct application of the law to the facts."); <u>see also</u> <u>Wright v.

Sullivan</u>, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); <u>Ficca</u>, 901 F. Supp.2d at 536 ("[T]he court has plenary review

of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential

standard of review. First, when conducting this review "we are mindful that we must

not substitute our own judgment for that of the fact finder." <u>Zirnsak v. Colvin</u>, 777

F.3d 607, 611 (3d Cir. 2014) (citing <u>Rutherford</u>, 399 F.3d at 552). Thus, we are

enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply

determine whether substantial evidence supported the ALJ's findings. However, we

must also ascertain whether the ALJ's decision meets the burden of articulation

demanded by the courts to enable informed judicial review. Simply put, "this Court

requires the ALJ to set forth the reasons for his decision." <u>Burnett v. Comm'r of Soc.

Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted

on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for
> his decision. 220 F.3d at 119. Conclusory statements . . . are
> insufficient. The ALJ must provide a "discussion of the evidence" and
> an "explanation of reasoning" for his conclusion sufficient to enable

18

> meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d
> 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ
> particular "magic" words: "Burnett does not require the ALJ to use
> particular language or adhere to a particular format in conducting his
> analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

## B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under

Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.    20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").    20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).    In  making  this assessment,  the  ALJ  considers  all  of  the  claimant's  medically  determinable

impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize

the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here, where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

C.      **Duty of Articulation – Claimant's Use of a Cane**

Cases considering a claimant's use of a cane to ambulate aptly illustrate the importance of the ALJ's duty to clearly articulate the rationale for a decision denying disability benefits. Case law and Social Security regulations both recognize that a claimant's need to use a cane or assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in

certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal.

At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the cane or assistive device must be medically necessary.

> " 'To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed [.]' Social Security Ruling 96–9p." Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002). In short
>
> > Social Security regulations provide that an ALJ will not accommodate the use of a cane unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor. See, Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002).
>
> Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014).

Phillips v. Colvin, No. 1:16-CV-1033, 2017 WL 3820973, at *9 (M.D. Pa. Aug. 16, 2017), report and recommendation adopted sub nom. Philips v. Colvin, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning

25

Plaintiff's use of a cane." Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. Likewise, when the evidence indicates that the use of a cane is medically required and a vocational expert testifies that the plaintiff's use of a cane would render him unable to work, it is error for the ALJ to fail to set forth the reasons for rejecting this expert testimony, and the case should be remanded. Altomare v. Barnhart, 394 F. Supp. 2d 678, 682 (E.D. Pa. 2005). In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane, and a vocational expert testified that such cane use significantly erodes the employment base for a claimant, the failure to address these issues constitutes a failure of articulation by the ALJ warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012).

These principles which recognize the limiting effects of a cane on employment apply with particular force in a case such as this where the ALJ has fashioned an RFC which includes findings that "[t]he claimant could work at unprotected heights frequently, around moving mechanical parts frequently, in extreme cold and heat frequently, and in vibration frequently." (Tr. 1338). Indeed, finding an inherent conflict between the need to use a cane and an RFC which allows

26

for frequent exposure to unprotected heights, we have previously concluded that when an ALJ "fashioned an RFC for [a claimant] that allowed h[im] to perform . . . work at unprotected heights without accounting for h[is] need for a cane, a remand is warranted." Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087, at *9 (M.D. Pa. June 1, 2020).

It is against these benchmarks that we assess the instant case.

### C.   This Case Will Be Remanded.

In this case, we believe that there is an inherent confusion and contradiction in the ALJ's analysis of the issue of whether, and to what degree, Gostomski's use of a cane to stand and ambulate undermined his ability to work. This confusion is, in large measure, a function of the failure of the ALJ to make any mention of, or provision for, Gostomski's use of a cane when crafting an RFC in this case. The RFC's silence on this score is curious, since the clinical record is replete with references to Gostomski's use of a cane to stand and walk. Moreover, the record contains at least two clinical notations in which treating physicians instruct Gostomski to continue using a cane. (Tr. 948, 1358-59). Given the doctors' instructions to Gostomski to use a cane to stand and walk, we believe that the record aptly illustrates the medical necessity for a cane, a fact which the ALJ does not seem to have recognized. Further, it is evident that every opining medical expert factored

27

Gostomski's use of a cane into the evaluation of the severity of his impairments. Since all of the medical source considered and included Gostomski's use of a cane in their disability analysis, it was error for the ALJ to not address this cane usage in a more thorough and explicit manner.

This analytical ambiguity was then heightened by the ALJ's treatment of the state agency expert opinion. In this decision, the ALJ stated that he gave great weight to this state agency expert opinion. However, the state agency expert's opinion both assumed that Gostomski would need to use assistive devices at work and then strictly limited Gostomski's exposure to heights, vibrations, machinery, and some extremes in temperature. Yet, oddly, the RFC fashioned by the ALJ stated that Gostomski could have frequent exposure to the very conditions that the state agency expert said he should avoid. In this regard, we have in the past noted that there is an inherent contradiction between an RFC which permits a worker to be exposed to unprotected heights when the claimant must use of a can to stand, walk and balance. Therefore, we have held in these circumstances that when an ALJ "fashioned an RFC for [a claimant] that allowed h[im] to perform . . . work at unprotected heights without accounting for h[is] need for a cane, a remand is warranted." Dieter, No. 1:19-CV-1081, 2020 WL 2839087, at *9.

28

Further, we cannot conclude that these ambiguities and inconsistencies are harmless in the instant case. Indeed, the prejudice which flowed from this incomplete analysis was illustrated by the testimony of the vocational expert at Gostomski's 2020 disability hearing, who stated that if Gostomski needed to use a cane and have a sit-stand option, then "that would eliminate all work." (Tr. 1378).

Given these ambiguities, contradictions and inconsistencies in the ALJ consideration of Gostomski's need to use a cane at work, more is needed here to sustain the Commissioner's denial of this claim. It is axiomatic that the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter, 642 F.2d at 704. This means that there must be a logical nexus between the ALJ's factual findings and legal conclusion. That logical bridge is missing here. On the current record, with respect to the pivotal question regarding how Gostomski's use of a cane and need to sit and stand undermines his ability to work, the ALJ's burden of articulation is not met. Therefore, this matter will be remanded for further consideration by the Commissioner.

Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, this task should remain the duty and province of the ALJ on remand. Further, having found that a remand is

justified on these grounds, we have not addressed any other claimed errors because the ALJ may in the first instance address them upon remand. See McMillan v. Comm'r of Soc. Sec., No. 16-313, 2018 WL 6617841, at *4 (D.N.J. Dec. 18, 2018) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider the plaintiff's severe obesity impairment at the third step and the fifth step, and thus the Court "need not consider Plaintiff's other arguments at this juncture"); see also Lawrence v. Colvin, No. 15-2851, 2016 WL 1644622, at *10 (D.N.J. Apr. 26, 2016) (holding the same in finding that a remand was appropriate because the ALJ failed to properly consider one of the claimant's disabilities, and thus the ALJ would be required to engage in an entirely new evaluation concerning the claimant's other alleged severe disabilities).

## III.   **Conclusion**

Accordingly, for the foregoing reasons, IT IS ORDERED that this case be REMANDED for further consideration by the Commissioner.

An appropriate order follows.

/S/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

DATED: August 30, 2022.